FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 97 AUG 27 PM 2: 48
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| BEONTRAS MCWAINE, SR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 96-PT-0709-S |
| | ) | |
| UNITED STATES PIPE & | ) | |
| FOUNDRY COMPANY | ) | |
| | ) | |
| Defendant | ) | |

ENTERED
AUG 2 7 1997

## MEMORANDUM OPINION

### I. BACKGROUND

Beontras McWaine Sr. claims his former employer, United States Pipe & Foundry Company, by terminating his employment, discriminated against him on account of his race and age. McWaine is an African-American male citizen of the United States. He is fifty-seven (57) years of age. McWaine had been an employee of U.S. Pipe for thirty-three (33) years prior to his dismissal. Starting in June, 1963, McWaine had risen to the position of Supervisor Yard Department and Material Control by the time he was dismissed on July 20, 1995.

McWaine properly filed this lawsuit March 18, 1996 pursuant to statutory requirements contained in 19 U.S.C. Section 1331, 1343 (4), Title VII of The Civil Rights Act of 1964 and 42

U.S.C. 2000e, et seq., the Civil Rights Act of 1991, and the Age Discrimination in Employment Act, 29 U.S.C. Section 621 et seq.

## II. CONTENTIONS OF THE PARTIES

### A. Plaintiff's Contentions

McWaine asserts that the decision to fire him was motivated by race and age discrimination. He argues that the reason cited for his dismissal, the sexual harassment of subordinate employee DeLinda Williams, is mere pretext. Applying the standards explained in Meritor Savings Bank, FSB v Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 2406 (1986) and Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982), he contends he was not guilty of sexual harassment. According to McWaine, he and Williams had been engaged in a consensual, sexual relationship for the past five years, during which time, he admits to having sent Williams love notes, greeting cards and the like. McWaine states that he broke off the relationship with Williams in 1993. Subseqently, he never made demands for sexual favors nor conditioned aspects of her employment on the provision of said favors. He never made sexual references in her presence. In short, once the consensual relationship ended, McWaine contends, there was no contact of a sexual nature between McWaine and Williams.

According to McWaine, sexual harassment had nothing to do with his termination. He never sexually harassed Williams. In support of the contention that there was no sexual harassment, Plant Superintendent S.T. Dutchie Gurak testified through affidavit that Williams had never reported the alleged harassment to him. Williams never complained to McWaine personally about his conduct. She never filed an EEOC claim against the plant or one of its

2

employees, and Gurak never witnessed anything in McWaine's work that demonstrated he sexually harassed any U.S. Pipe employee. The managers who fired McWaine did so without a good faith belief that he actually harassed Williams. His termination was motivated by race and by age. McWaine offers the following undisputed facts in support of these conclusions. His replacement was white. McWaine is an African-American male and DeLinda Williams is a caucasian female. McWaine was over forty at the time of his discharge. His replacement was under forty.[1] In addition, when McWaine's son, Curtis R. McWaine, was investigated for sexual harassment, while working for U.S. Pipe, he was not summarily fired, but received legal representation and a full hearing. Plaintiff suggests that not receiving this level of process is evidence of disparate treatment motivated by age discrimination.

### B. Defendant's Contentions

U.S. Pipe contends that the exclusive reason for McWaine's discharge was his sexual harassment of DeLinda Williams. It contends that its decision was in no way motivated by McWaine's age or race. Plant Manager Robert Acoff and Personnel Director Benny Smith conducted a thorough investigation of the allegations and concluded that McWaine sexually harassed Williams. They maintain that this belief was both reasonable and in good faith. U.S. Pipe furnishes several sources of evidence that support the legitimacy of this belief. DeLinda Williams testified at deposition about the specific instances and graphic examples of McWaine's

---

[1] U.S. Pipe maintains that the replacement supervisor, Alan Griffin, was forty-three (43) at the time he was placed in McWaine's former position.

3

inappropriate behavior.[2] James Witherspoon, through affidavit, corroborated most of the examples Williams cited. He too described the episodes of harassment he witnessed at the plant. Benny Smith described the investigative process employed to assess the validity of Williams' complaints. He offered the conclusions he and the plant manager formulated in deciding to dismiss McWaine. Smith encouraged McWaine to provide them with any evidence that might verify the consensual nature of the relationship. Smith then followed up these suggestions, but to no avail. McWaine had no viable explanation for Williams' complaints and could not prove that a consensual relationship ever existed

According to U.S. Pipe, there is no evidence, and none alleged, that the decision to terminate McWaine's employment was racially motivated. They concede that his replacement was white, but U.S. Pipe also points out that no white supervisor had been retained after having engaged in identical behavior. No other white supervisor had been the object of such complaints. Plaintiff admitted, during deposition by counsel for U.S. Pipe, that only his subjective feelings led him to believe that he was dismissed because of his race. When asked for objective proof to support that feeling he answered, "I mean, you know, no more than your feelings." (McWaine Depo. Pp. 38-40).

---

[2] Williams testified that McWaine made lewd and offensive comments to her at work. He constantly propositioned her to give him sex, exposed himself to her, followed her into the women's bathroom, made promises for advancement in return for sexual favors, touched her inappropriately, gave her various gifts and then demanded sexual favors. He singled her out before coworkers with crude and improper remarks and continuously asked her why she refused to meet with him after work, go to bed with him, perform oral sex or have sex with him. Upon her making it obvious to McWaine that she was not interested in his propositions and that his conduct made her feel uncomfortable, he began to retaliate against her. He fabricated reasons for disciplining her and called unnecessary meetings of the staff in order to publicly censure her. James Witherspoon corroborates much of Williams' testimony.

4

U.S. Pipe also contends that age was not a factor in the decision to fire McWaine. The managers who made the decision to terminate his employment were all over forty themselves. The man who replaced McWaine was over forty. McWaine acknowledges that he is unable to come forward with any other supervisor under age forty who engaged in nearly identical conduct as McWaine and yet was retained by U.S. Pipe. His son, Curtis McWaine, was also fired based on the investigation of allegations of sexual harassment leveled against him. Plaintiff cites the more extensive procedural protections Curtis enjoyed and the fact that he was kept on the job for months before being terminated. U.S. Pipe maintains that the situations were in no way similar and both men were eventually fired.[3] Again, U.S. Pipe contends it fired Beontras McWaine for his sexual harassment of DeLinda Williams, not because he was over forty years old.

### III. ANALYSIS AND APPLICATION OF THE LAW

A. **Plaintiff Successfully Plead A Prima Facie Case Of Discrimination Under Title VII And The ADEA**

McWaine has adduced sufficient facts to make a prima facie case of race discrimination

---

[3] Curtis McWaine was accused of sexual harassment by Lisa Parsons in November, 1993. Parsons reported McWaine had repeatedly asked her out for dates and had called her at home on one occasion. Benny Smith met with McWaine, advised him of the allegations, instructed him to avoid all contact with her and transferred her to a similar position with a different supervisor. Parsons eventually resigned from the plant and filed a sexual harassment suit against U.S. Pipe. (Lisa Parsons v. U.S. Pipe, CV 95-AR-1177-S). Only at that time did she make allegations of improper touching or lewd comments. U.S. Pipe performed interviews and a full investigation. Another employee, Sherry Russell, also filed a lawsuit against U.S. Pipe and Curtis McWaine for sexual harassment. (Sherry Russell v. U.S. Pipe, CV 95-PT-3104-S). McWaine was suspended without pay until further investigation. The investigation proceeded according to the discovery schedules followed in the lawsuits. U.S. Pipe argues that this constraint prevented the plant from handling the in-house resolution of the matter as quickly and efficiently as it handled the investigation of Beontras McWaine.

under Title VII. The McDonnell Douglas standard identifies the four prongs necessary for making a prima facie case of race discrimination under Title VII. McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). The plaintiff must show, "i) that he belongs to a racial minority; ii) that he applied and was qualified for a job for which the employer was seeking applicants; iii) that, despite his qualifications, he was rejected; and iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Id. McWaine satisfies these requirements. He is black. His thirty-three years of experience with the plant and promotion to Supervisor of the Yard Department and Material Control bespeaks his qualifications. He was terminated on July 20, 1995. He was replaced by a white male of like qualifications.

The requirements for a prima facie case under the ADEA are nearly identical. Plaintiff must show he was over the age of 40, discharged, qualified for the position from which he was discharged, and that a younger person replaced him. Elrod v. Sears, Roebuck and Company, 939 F.2d 1466, 1469 (11th Cir. 1991). McWaine was over forty at the time of his discharge and was arguably qualified. However, the parties disagree over whether Alan Griffin, McWaine's replacement, was over forty or not. Defendant's evidence indicates he was born on January 13, 1953, making him forty-three at the time of his assignment. (Defendant Brief at p. 8). Plaintiff alleges in its pleadings that Griffin was under forty. (Affidavit of Beontras McWaine at ¶ 13). This conflict in testimony creates an issue of fact. But viewing the evidence in the light most favorable to the nonmovant, plaintiff has made out a prima facie case for age discrimination.

6

B.  **Whether Plaintiff Has Presented Sufficient Evidence To Survive Judgment For Defendant As A Matter Of Law.**

Once Plaintiff has successfully made a prima facie case of unlawful discrimination under both Title VII and the ADEA, the order and allocation of proof or "burden shifting" announced in McDonnell Douglas applies similarly for both claims. 411 U.S. at 802. Complainant must carry the initial burden and establish a prima facie case. McWaine has done so on both claims. The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection or termination. Id. If the defendant is able to do this sufficiently, the burden shifts back to the plaintiff. Id. at 804. Plaintiff must show that the stated reason for termination was pretext. Id. Plaintiff must be given a "full and fair opportunity to demonstrate, by competent evidence, that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision. Id. at 805. The court must determine whether McWaine has shown sufficient facts to demonstrate that U.S. Pipe had no legitimate nondiscriminatory reason for firing him or whether the reason cited was pretext.

1.  Standard of Review

Summary judgment is appropriate only if this court concludes that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986).. The moving party bears the burden of informing the court of the basis for its motion and identifying the pleadings that demonstrate the absence of a fact issue. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communications, Inc., 849 F.2d 570, 575 (11th Cir. 1988).

The court must consider whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law., Anderson, 477 U.S. at 251-252  In so doing, the court views the evidence in the light most favorable to the nonmoving party, in this case, McWaine. Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989).  McWaine must provide more than a mere scintilla of evidence in order to survive a motion for judgment as a matter of law. Id.

> 2. U.S. Pipe need not prove McWaine was guilty of sexual harassment to have a legitimate nondiscriminatory reason for discharge.

Whether U.S. Pipe was correct in its conclusion that McWaine sexually harassed Williams is not decisive of the ultimate question of discrimination.  To satisfy its burden of production, once a prima facie case is made, U.S. Pipe need not persuade the court that it was actually motivated by the proffered reasons. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094 (1981). "It is sufficient if the defendant's evidence raises a genuine  issue of fact as to whether it discriminated against the plaintiff." Id.  It must produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. Id. at 257, 101 S.Ct. at 109.  A lengthy of analysis of whether sexual harassment took place or not focuses upon the wrong question.  The relevant inquiry is whether U.S. Pipe reasonably believed Beontras McWaine sexually harassed Williams and whether it was the primary reason for his discharge. See  Hawkins v. Ceco Corp, 883 F.2d 977, 980 n.2 (11th Cir. 1989), cert. den., 495 U.S. 935, 110 S.Ct. 2180, 109 L.Ed.2d 508 (1990)(That the employee did not in fact engage  in misconduct

reported to the employer is irrelevant to the question whether the empoyer believed the employee had done wrong.) The inquiry of the court should be limited to whether the employer gave an honest explanation of its behavior. Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988). See also Smith v. Papp Clinic, 808 F.2d 1449, 1452-53 (11th Cir. 1987)("If the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race' and the employer has not violated Sec. 1981.").

        3.     McWaine must provide sufficient evidence that U.S. Pipe did not believe McWaine sexually harassed Williams and/or they fired him for reasons of age and race

McWaine has shown few, if any, facts that imply U.S. Pipe did not believe he sexually harassed DeLinda Williams. To preclude judgment entered as a matter of law, he must present facts that could lead a reasonable jury to conclude that the employer's proffered explanation was not the true reason he was fired. Richardson v. Leeds Police Department, 71 F.3d 801, 807 (11th Cir. 1994). Yet he has offered the court no evidence that his termination was motivated by anything other than his violation of company policies and federal law. The court has seen little competent evidence that U.S. Pipe's asserted belief in the harassment allegations were unworthy of credence other than his conclusory denials of guilt. To create a genuine issue of material fact on the question of pretext, McWaine would have to show U.S. Pipe did not believe McWaine sexually harassed Williams, but cited it as its reason in order to conceal the real motivating factors of race and age discrimination. Or, he must demonstrate it believed he was guilty of the harassment but the main reason for his dismissal was still discrimination. In either scenario, McWaine must come forward with independent evidence that the dismissal was motivated by

9

discrimination. To survive summary judgment, "the plaintiff was... obligated to present evidence that the employer's legitimate reasons were not what actually motivated its conduct." Cooper-Houston v. Southern Railway Co., 37 F.3d 603, 605 (11th Cir. 1994). The Plaintiff has not met his obligation.

McWaine testifies in his affidavit that the decision to fire him was racially motivated. His evidence of this is that he was black and Ms. Williams was white. Yet there is nothing on the record to indicate that the interracial aspect of the harassment played any role in the decision to discharge. McWaine also offers as proof of racial motivation the fact that his replacement was white. Combined with other evidence, this might be some proof of racial animus. But on its own, it is not enough to convince a reasonable juror that race was the motivating factor. McWaine is unable to point to any other examples where a white supervisor, under investigation for sexual harassment was treated any differently. Other than his subjective feeling that he was fired because he was black, there is not more than a scintilla of evidence to substantiate his race discrimination claim.

McWaine's testimony evincing age discrimination is similarly limited. The court assumes that McWaine's replacement was under 40. The only example he cites of disparate treatment is the comparison with his son, who was also accused of sexual harassment. He alleges that his son, under the age of forty, received different treatment during the course of U.S. Pipe's investigation into those allegations. There are reasonable and undisputed explanations for why the son received legal representation, more extensive hearings, and was allowed to continue working while under suspicion. The undisputed evidence reflects an entirely different set of circumstances than those surrounding Beontras McWaine's situation.. The initial complaint was much less serious than the

10

allegations against Beontras. They were not seen by management as requiring immediate disciplinary action. More importantly, Curtis' victim filed a lawsuit against U.S. Pipe for his conduct. Beontras' harassment was not, to the court's knowledge, the subject of a separate lawsuit against U.S. Pipe. These distinctions explain the different treatment received by the father and son. Curtis needed legal representation because he was party to a lawsuit. He continued to receive a salary because an official response could not be executed until the complainants were interviewed or deposed. The process took longer since they had to adhere to the discovery calender. There is no proof that Beontras' termination was part of a larger pattern of removing older employees from supervisory positions. In addition, all of the primary players invovled in his termination, Smith and Acoff, were over the age of forty and within the class protected by the ADEA. According to the court in Elrod v. Sears, Roebuck and Company, 939 F.2d 1466, 1471 (1991), these men "are more likely to be the victims of age discrimination than its perpetrators." There is not sufficient evidence from which a jury could reasonably conclude that the reasons articulated by U.S. Pipe were merely a pretext for discrimination or that a discriminatory reason more likely motivated the employer. Carter v. Miami, 870 F.2d at 585.

       The court is aware of the sometimes recognition that "[i]n general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).[4] Nonetheless, "the establishment of a prima facie case does not in itself entitle an employment discrimination plaintiff to survive a motion for summary judgment in

---

[4] See, however, Early v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990) and numerous other Eleventh Circuit cases which have either affirmed summary judgments or reversed trial judges for not granting judgments as a matter of law in such cases.

11

all cases." Id., 821 F.2d at 595.

Grigsby goes on to say that

> We also recognize, however, that the inference of intentional discrimination raised by a plaintiff's prima facie case may be stronger or weaker, depending upon the facts of a particular case. . . . "To a large extent, of course, the strength or weakness of the inference of discrimination created by the employee's prima facie case defines the nature of the employer's rebuttal" . . . . In some cases the defendant's evidence of legitimate, non-discriminatory reason for its actions may be so strong as to rebut completely the inference raised by plaintiff's prima facie case. Such is the case here. Of course, even in the face of such strong justification evidence, a plaintiff might still create an issue of fact and avoid summary judgment by introducing additional evidence of pretext. But a plaintiff may not in all cases merely rest on the laurels of her prima facie case in the face of powerful justification evidence offered by the defendant. Without more, the evidence constituting Grigsby's prima facie case is not sufficient to create an issue of fact in light of the compelling evidence of lawful motive presented by Reynolds.

Id. at 595-97.

> [O]nce the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by defendant were merely a pretext for discrimination.

Id. at 594.

Based on the foregoing, the court judges its task to determine the following:

    (1)    Has plaintiff offered evidence of a prima facie Title VII or ADEA case?

    (2)    If he has, how strong is it?

    (3)    Has defendant offered rebuttal evidence?

    (4)    If so, how strong is it? Is it strong enough to overcome a weaker prima facie case?

    (5)    If defendant's rebuttal is strong enough to overcome a weaker prima facie case, has

plaintiff offered sufficient evidence of pretext to create an issue of fact?

This court concludes that any possible inference of discrimination raised by plaintiff has been strongly rebutted by defendant's reasons for terminating plaintiff. If plaintiff has proved a prima facie case, it is, at best, weak.

Plaintiff urges that these reasons were mere pretext. He contends that his age and race were impermissibly considered in the decisions. In Grigsby, supra, the court said, inter alia,

> Grigsby also asserts that the district court erred in completely accepting Reynolds justification that it did not select her for the District Traffic Manager position because it found someone else who was objectively more qualified. Her entire evidence on this point consisted of her affidavit and several accompanying exhibits. Grigsby showed that her salary performance appraisal for the period preceding her application exceeded that of Regan Ragland, the candidate who was eventually chosen for the position. Grigsby also asserted that the supposedly objective standards for the position were created after Ragland was selected for the job. Further, Grigsby stated in her affidavit that she was told by Jim Ogborne, Reynolds' Customer Service Manager, that "the characters the Traffic Manager would have to deal with were pretty rough and he did not want me to have to deal with this type of thing." Grigsby Aff. at 2. However, in light of Reynolds' extensive evidence of the relative qualifications of the applicants, Grigsby's testimony and exhibits simply fail to raise any inference of pretext or discriminatory intent.
>
> It is undisputed that Ragland had far greater experience with Reynolds' cost accounting system, capitalization projects, auditing procedures, and computer systems than did Grigsby. Ragland also had eight years experience in various departments of the Alloys plant, including four years experience supervising professional engineers, as opposed to Grigsby whose experience was largely limited to the smaller WRB plant. Moreover, the fact that Grigsby received superior performance ratings in her WRB position does not refute the fact that Ragland was better qualified for the more sophisticated job Reynolds sought to fill in the Alloys plant.

Id. at 596.

> This is not a situation where, as Grigsby contends, the district court impermissibly weighed the parties' evidence instead of merely looking for the existence of a genuine issue of fact. Where the defendant's justification evidence completely

13

> overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer. Grigsby's conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where Reynolds has offered such extensive evidence of legitimate, nondiscriminatory reasons for its actions. See Meiri v. Dacon, 759 F.2d at 998 (conclusory allegations of discrimination insufficient to raise inference of pretext and thereby defeat summary judgment motion). Under these circumstances, Reynolds was entitled to summary judgment.

Id. at 597. In Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988), where the court affirmed the grant of a summary judgment, the court stated:

> Before proceeding to our discussion of pretext, we confront initially Young's claim that he produced direct evidence of discrimination. According to Young, Biltgen's oral and written comments that Young lacked the "wherewithal" to perform his job, "moved in slow motion," and was "not proactive," "not aggressive," and approximately the same age as Biltgen's father all constitute direct evidence of discrimination. We do not agree.
>
> It is clear that not every comment concerning a person's age presents direct evidence of discrimination. See, e.g., Barnes, 814 F.2d at 610-11 (statement that plaintiff would have to take another physical examination "and at your age, I don't believe you could pass it," while inappropriate and condescending," was not direct evidence of discrimination); see also Mauter, 825 F.2d at 1558; Chappell v. GTE Products Corp., 803 F.2d 261, 268 n. 2 (6th Cir. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). Here, the majority of Biltgen's comments do not even directly concern Young's age. Rather, the remarks in the evaluations that Young lacked the wherewithal to adequately perform his job, moved in slow motion, and was neither aggressive nor "proactive," at most referred only to characteristics sometimes associated with increasing age. As this court has stated, "'Congress made plain that the age statute was not mean to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence.'" Barnes, 814 F.2d at 611 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir. 1979)) (emphasis added).
>
> Equally as important, the remarks are not directly probative of an intent to discriminate. This is not a case where Biltgen told Young that he would be fired because he was too old. See Castle v. Sangamo Weston, Inc., 887 F.2d 1550, 1558 n. 13 (11th Cir. 1988) (discussing "direct" evidence of discrimination). Instead, it is a case where the plaintiff has inferred that certain facially neutral

14

comments referred to his age in a discriminatory fashion. However, in evaluating any salesman's performance, statements regarding the individual's aggressiveness, enthusiasm, and vigor are hardly surprising.

In Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988), the court stated:

> However, we also hold the district court was justified in entering summary judgment on the grounds that plaintiffs failed to present any credible evidence on the issue of pretext. To avoid summary judgment, a party must produce "specific facts showing that there remains a genuine issue for trial" and evidence "'significantly probative' as to any [material] fact claimed to be disputed." Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983) (quoting Ruffing v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)). Thus, plaintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.
>
> Mrs. Branson presented no evidence showing that the decision to eliminate her job was motivated by age discrimination and admits she would have required at least minimal training to assume any of the positions retained by younger employees. Her assertion that Price River should nonetheless have retained her is insufficient to create a genuine issue of fact regarding Price River's articulated reasons for her discharge and avoid summary judgment. The ADEA does not require employers to accord members of the protected class preferential treatment, but only that they treat age neutrally. See Williams, 656 F.2d at 129-30.
>
> Mrs. Saccomanno also failed to create a genuine issue of fact regarding Price River's articulated reasons for her discharge. She admits Mr. Anderson "felt" she was less qualified than Mr. Hanson for the accounting department's remaining position and claims only that she was in fact equally or more qualified that Mr. Hanson. As courts are not free to second-guess an employer's business judgment, this assertion is insufficient to support a finding of pretext. See Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed2d 383 (1981). It is the perception of the decision maker which is relevant, not plaintiff's perception of herself. Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Consequently, the district court's order of summary judgment was appropriate.

In Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987), the court stated:

> . . . Rather, the plaintiff seeks to present direct evidence of discriminatory intent.

> In his affidavit, Mauter recounts a statement made to him by Carl Morton, a THC vice president who retired in 1983. According to Mauter, Morton indicated that the plaintiff had grounds for a lawsuit because "The Hardy Corporation was going to weed out the old ones." Morton also filed an affidavit indicating that he has no memory of making such an assertion to Mauter, and that he has no knowledge of facts suggesting that age had any bearing on the decision of THC's management to terminate Mauter.
>
> For purposes of considering the propriety of summary judgment, we assume that Morton made the statement to Mauter. It is undisputed, however, that Morton played no part in the decision to terminate the plaintiff. Furthermore, Morton's uncontradicted affidavit establishes that he has no factual basis for his assertion that age was a factor in Mauter's discharge. Therefore, we hold that this statement is too attenuated to present a genuine issue of material fact as to THC's discriminatory intent. See La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1412-13 (7th Cir. 1984).

In Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988), the court stated:

> Although summary judgment should be granted with caution in employment discrimination cases, there are occasions when such disposition is appropriate. See, e.g., Beard v. Annis, 730 F.2d 741 (11th Cir. 1984). This is one of those cases. Where, as here, full discovery has been conducted, the Supreme Court stated recently that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202, 212 (1986)(citations omitted). See also Celetex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We agree with the district court that the evidence in this case was such as to warrant summary judgment.

In Pace v. Southern Ry. System, 701 F.2d 1383, 1391 (11th Cir. 1983), the court stated:

> Where the ADEA plaintiff has shown "no evidence 'which might infer that age was even a factor in the decision'" of which plaintiff complains summary judgment is warranted. Simmons v. McGuffey Nursing Home, Inc., 619 F.2d at 370. A plaintiff, when faced with a motion for summary judgment, cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of

16

material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, nondiscriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented. As the Supreme Court noted in Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7, once established a prima facie case creates a rebuttable presumption of discrimination; but this presumption alone does not create an inference that a material fact, sufficient to present a jury question, is an issue. See also Reeves v. General Food Corp., 682 F.2d 515, 521-22 & n. 9 (5th Cir. 1982). Cf. Moore v. Sears, Roebuck & Co., 464 F. Supp. at 366 ("Only in an extraordinary instance could rebuttal evidence be so conclusive as to permit summary adjudication). In Simmons, supra, defendants rebutted plaintiff's prima facie case by showing a legitimate, nondiscriminatory reason for the discharge and plaintiff failed to prove that age, rather than the nondiscriminatory reason, was the motivation for the decision. 619 F.2d at 371. This court held that summary judgment was appropriate because "[t]he possibility of a jury drawing a contrary inference sufficient to create a dispute as to a material fact does not reify to the point even of a thin vapor capable of being seen or realized by a reasonable jury." Id.

See Clark v. Huntsville Bd. of Educ., supra at 527. See also Nix v. WLYC Radio Rahall Communications, 738 F.2d 1181, 1185 and 1187 (11th Cir. 1984), where the court said:

> The court thus may not circumvent the intent requirement of Plaintiff's ultimate burden of persuasion by couching its conclusion in terms of pretext; a simple finding that the Defendant did not truly rely on its proffered reason, without a further finding, that the Defendant relied instead on race will not suffice to establish Title VII liability.
>
> * * *
>
> Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason . . . "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve.

At best, plaintiff's evidence is "merely colorable." See Young, supra, 840 F.2d at 828. Plaintiff

has introduced no substantial evidence "that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence." Mantor v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987).

See also Early, supra,

> Upon review of a grant of summary judgment, we apply the same legal standard that bound the district court. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The trial court "must consider all the evidence in the light most favorable to the non-moving party," Rollins, 833 F.2d at 1528, and "resolve all reasonable doubts in favor of the non-moving party." Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987). A trial court, however, is not required "to resolve all doubts in such a manner." Barnes, 814 F.2d at 609.
>
> "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."' Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P.1). "[The summary judgment] standard mirrors the standard for a directed verdict under the Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.
>
> Consideration of a summary judgment motion does not lessen the burdens on the non-moving party: the non-moving party still bears the burden of coming forward with sufficient evidence on each element that must be proved. Rollins, 833 F.2d at 1528. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the [movant's] substantive evidentiary burden." Anderson, 477 U.S. at 254, 106 S.Ct. at 2513. The trial judge must bear in mind the "actual quantum and quality of proof necessary to support liability" in a given case. Id. "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, we must affirm the grant of summary judgment [for the defendant]." Barnes, 814 F.2d at 609.

> "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552.
>
> Where as here discovery has been conducted, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted) (emphasis added); accord Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988). Summary judgments for defendants are not rare in employment discrimination cases. See, e.g., Mauter v. Hardy Corp., 825 F.2d 1554 (11th Cir. 1987); Grigsby v. Reynolds Metal Co., 821 F.2d 590 (11th Cir. 1987); Palmer v. District Bd. of Trustees of St. Petersburg Junior College, 748 F.2d 595 (11th Cir. 1984); Pace v. Southern Ry. Sys., 701 F.2d 1383 (11th Cir. 1983); Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369, 371 (5th Cir. 1980).

(Emphasis in original). 907 F.2d 1080-81.

In Early, supra, the court also stated:

> The defendant may be entitled to summary judgment if it produces evidence of legitimate nondiscriminatory reasons for the employment action. To survive summary judgment, the plaintiff must then present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice. Mauter, 825 F.2d at 1558; Grigsby, 821 F.2d at 596-97; Palmer, 748 F.2d at 599; Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983); Pace, 701 F.2d at 1391; Simmons, 619 F.2d at 371. Most important, the plaintiff always bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.

907 F.2d at 1081.

## IV. CONCLUSION

19

Beontras McWaine has not offered substantial probative evidence that race or age motivated his dismissal. The court finds insufficient facts in the record to indicate U.S. Pipe did not reasonably believe that he sexually harassed DeLinda Williams. Plaintiff does not provide proof that the real reason was discriminatory. The bulk of McWaine's case relies on his subjective feelings and conclusions. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered... extenisve evidence of legitimate, non-discriminatory reasons for its action." Carter, 870 F.2d at 585. Accordingly, summary judgment will be granted as to these claims.

This 27th day of August, 1997

ROBERT B. PROPST
Senior United States District Judge